### THE LENA.
### ALICE BARGE CO., Inc., v. READING CO.
### No. 16480.

District Court, E. D. New York.

March 8, 1943.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libellant.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for respondent.

ABRUZZO, District Judge.

This action was brought to recover damages sustained by the libellant's barge "Lena" on June 25, 1941, while in tow of the tug "Wyomissing". The tow consisted of ten loaded barges, made up with three tiers of three barges each, abreast of each other, and with the "Lena" towing alone in the fourth tier astern of the middle barge in the third tier.

It is claimed that while the tow was proceeding up the East River and making a turn to port at Corlears Hook there was a contact between the starboard stern corner of the port barge in the third tier and the port bow corner of the "Lena".

The action has resolved itself into an issue as to whether the tow was properly made up, and if improperly made up, whether the responsibility rests with the master of the tug or with the barge master or both.

The libellant contends that the tow was improperly made up, first, because the "Lena" was being towed under the middle barge of the third tier instead of under the port or starboard boats in that tier. This resulted in the tow turning to port to go around Corlears Hook, the port tier barges surging back causing the port boat in the third tier to collide with the "Lena".

Secondly, the barge ahead of the "Lena" was of a freeboard four feet less than the "Lena", thereby subjecting the "Lena" to pounding which increased the damage.

The theory is advanced that if the barge had been astern of the port boat in the third tier or astern of the starboard boat

in that tier, the risk of damage would have been greatly eliminated.

There appears to be no impropriety in the position of the "Lena" for there was no more danger behind the middle boat in the third tier than if she had been astern of either the port or starboard boats ahead.

There is no evidence that the tow made a sharp turn nor that the contact was greater than that to be expected on a smooth voyage.

The captain of the "Lena" testified that he tied the boat himself and at no time made any complaint as to the position of his barge.

The survey indicated that the damage was all less than three feet below the deck of the barge. The barge captain stated that his bow planks were from eight (8) to ten (10) inches wide and that the first bow plank was right under the deck. Assuming that they were ten (10) inches wide, the bottom of the third bow plank would still be less than three feet below deck. The "Glenmore" was three feet lower in the water than the "Lena".

It is impossible to believe that the damage claimed by the "Lena" could have been caused by the contact testified to by the "Lena" unless the barge was so old that it could not withstand ordinary rubbing and contacts.

It is difficult to conceive, from the facts attested to by the "Lena", how the port corner of the "Lena" could have come in contact with the "Glenmore".

The flood tide was on the port side of the tow and tended to move the tow toward Brooklyn. It affected the tail end of the tow as much, if not more, than any other part of the tow.

While the tide is having this influence on a tow, the tugboat proceeding ahead, the natural effect of the tide with the tow moving thus would be to keep the port line between the boat ahead and the "Lena" taut. If there is any slack in any of the lines, it would most likely be on the starboard line.

■ The physical circumstances, in conjunction with the testimony given, indicate that the damage did not occur when the tow was rounding Corlears Hook.

■■ The "Lena" was properly placed in the tow and if any contact occurred it was one which would ordinarily be expected. Any damage sustained was due to the fact that the "Lena" was an old boat. A tug is not an insurer of the safety of its tow. It is liable only for its negligence. Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699.

■ In "The John E. Berwind", 2 Cir., 270 F. 569, the Court held that harbor navigation requires vessels to be able to withstand reasonable rubbings and contacts.

The libel is there dismissed.

Submit findings of fact and conclusions of law in conformity with this opinion.